IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 10424 DPW

TECOMET, INC.  )
                               )
                               )  C.A. No.
        MAGISTRATE JUDGE COHEN
        Plaintiff,   )
                               )  RECEIPT # 54213
   v.                    )  AMOUNT $ 50
                               )  SUMMONS ISSUED yes
JAMES ATKINSON,  )  LOCAL RULE 4.1
                               )  WAIVER FORM
                               )  MCF ISSUED
        Defendant.   )  BY DPTY. CLK. TOM
                               )  DATE 3/2/04

## COMPLAINT AND DEMAND FOR JURY TRIAL

### The Parties

1.   Plaintiff Tecomet, Inc. is a Massachusetts corporation having its principal place of business at 207 Lowell Street, Wilmington, Massachusetts 01887-3379.

2.   Defendant James Atkinson ("Atkinson") is a resident of Virginia.

### Jurisdiction and Venue

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and supplemental jurisdiction pursuant to 28 U.S.C. §1367. This Court has personal jurisdiction over the Defendant pursuant to Mass. G.L. Ch. 223A, §§3(a), (b), (c), and/or (d).

4.   Venue is proper in this Court under 28 U.S.C. §§1391(a).

### General Averments

5.   Tecomet, Inc. and its predecessors ("Tecomet") have provided and continue to provide the highest quality, precision net-shape forgings, precision machining,

photochemical etching, precision assemblies, drawn metal configurations and custom manufactured products for the bio-medical and high technology markets.

6. Tecomet was formerly a division of Thermo Electron Corporation ("Thermo"). Tecomet became a subsidiary of Thermo Biomedical, Inc. when Thermo assigned all Tecomet shares to Thermo Biomedical, Inc. - an entity now known as Viasys Healthcare Inc. ("Viasys"). Tecomet, therefore, is now a subsidiary of Viasys.

## ATKINSON'S WAS GRANTED ACCESS TO TECOMET PROPRIETARY INFORMATION AS A CONSULTANT FOR TECOMET

7. Tecomet retained the consulting services of Defendant James Atkinson in connection with several projects beginning in December 1996 through at least March 2000. During that time, Atkinson worked with and/or researched large image systems, collimator technology, ion beam etching, electronic forms for invoices and small animal imaging systems.

8. In connection with each of his consulting engagements with Tecomet, Atkinson agreed not to disclose to others or use for his own benefit during his consulting relationship with Tecomet or thereafter any trade secrets or Tecomet private information pertaining to any of the actual or anticipated business of Tecomet or any of its customers, consultants, or licensees, acquired by him during the period of his consulting relationship.

9. As a result of Atkinson's confidential consulting relationship with Tecomet, and while he was in a position of responsibility, trust and confidence as a consultant for Tecomet, Atkinson became intimately familiar with Tecomet's operations and technology, and was granted access and acquired knowledge of certain trade secrets and confidential, private and proprietary information that are the property of Tecomet and that pertain to its actual and/or

anticipated business and/or its customers, consultants, and/or licensees ("Tecomet Proprietary Information") including but not limited to:

(a) certain methods and equipment (including tooling) to produce velcro, patchook, and crosshook features including, but not limited to, etching techniques;

(b) certain methods and techniques involving the combination of photochemical etching and ion beam etching;

(c) brazing and plating methods and techniques related to the use of the alloy, CuSil;

(d) certain methods and techniques for the lithographic production of precision equipment including, but not limited to, those related to the use of floating pins and epoxy; and

(e) certain methods and techniques for the replication of lithographically derived, stack laminated masters including, but not limited to, such processes as: i) designing molds, ii) fabricating laminations, iii) stacking and assembling laminations, iv) producing castings, and v) demolding castings.

## ATKINSON'S CONSPIRACY WITH APPLEBY AND FRASER TO MISAPPROPRIATE TECOMET INTELLECTUAL PROPERTY

10. Atkinson was introduced to Tecomet through Michael Appleby. Appleby was and is a close personal friend of Atkinson who was employed by Tecomet at the time Atkinson was first retained as a consultant by Tecomet.

11. Between March 1988 and October 2000, Appleby was either an employee involved in product development at Tecomet or a consultant providing similar services to Tecomet.

12. Iain Fraser is also a former employee of Tecomet. Fraser was employed by Tecomet from January 1997 to November 2000. During his employment at Tecomet, Fraser primarily worked for Appleby.

13. As a result of Appleby's and Fraser's employment and consulting relationships with Tecomet, and while they were in positions of responsibility, trust and confidence at Tecomet, Appleby and Fraser became intimately familiar with Tecomet's operations and technology, and were granted access and acquired knowledge of Tecomet Proprietary Information including but not limited to:

(a) certain methods and equipment (including tooling) to produce velcro, patchook, and crosshook features including, but not limited to, etching techniques;

(b) certain methods and techniques involving the combination of photochemical etching and ion beam etching;

(c) brazing and plating methods and techniques related to the use of the alloy, CuSil;

(d) certain methods and techniques for the lithographic production of precision equipment including, but not limited to, those related to the use of floating pins and epoxy; and

(e) certain methods and techniques for the replication of lithographically derived, stack laminated masters including, but not limited to, such processes as: i) designing molds, ii) fabricating laminations, iii) stacking and assembling laminations, iv) producing castings, and v) demolding castings.

20. Atkinson, Appleby and Fraser used the information that they obtained in connection with their work at Tecomet as a source for the disclosure contained in the various patent applications filed on their behalf.

21. International Patent Application No. WO 02/098624 entitled Method For Manufacturing Devices and Devices Made Thereby (hereinafter the "'624 Application") and naming MSI as the applicant and Atkinson, Appleby and Fraser as the inventors, was published under the Patent Cooperation Treaty on December 12, 2002. A true and correct copy of the '624 Application is attached hereto as Exhibit A and is incorporated herein by reference.

22. United States Patent Application 10/282,402 (the "'402 Application") filed October 29, 2003 entitled Devices, Methods, and Systems Involving Cast Collimators naming Atkinson, Appleby and Fraser as inventors, and United States Patent Application 10/282,441 (the "'441 Application") filed October 29, 2003 entitled Devices, Methods, and Systems Involving Cast Computed Tomography Collimators naming Atkinson, Appleby and Fraser as inventors were published on July 10, 2003. A true and correct copy of the '402 and '441 Applications are attached hereto as Exhibits B and C and are incorporated herein by reference.

23. United States Patent Application 10/308,545 (the "'545 Application") filed December 3, 2003 entitled Devices, Methods, and Systems Involving Castings naming Atkinson, Appleby and Fraser as inventors was published on December 25, 2003. A true and correct copy of the '545 Application is attached hereto as Exhibit D and is incorporated herein by reference.

24. The '624, '402 and '441 Applications claimed priority to United States Provisional Applications 60/295,564 filed June 05, 2001 entitled Collimator Casting Process, and

60/339,773 filed December 17, 2001 entitled Method of Manufacturing Three-Dimensional Micro-Mechanical Devices (hereinafter the "'564 Application" and the "'773 Application" respectively) each of which name Atkinson, Appleby and Fraser as inventors. A true and correct copy of the '564 and '773 Applications are attached hereto as Exhibits E and F respectively and each are incorporated herein by reference.

25. Atkinson, Appleby and Fraser included information concerning Tecomet Proprietary Information in the '624 Application, the '402 Application, the '441 Application, the '545 Application, the '564 Application and the '773 Application (collectively the "Patent Applications") without the consent or authority of Tecomet.

26. Upon information and belief, additional patent applications that have been filed, are being prosecuted by Atkinson, Appleby and Fraser, and contain Tecomet Proprietary Information.

## ATKINSON'S INTERFERENCE WITH TECOMET'S CONTRACTUAL RELATIONS

27. During his employment with Tecomet, Appleby duly executed a Company Information and Invention Agreement ("the 1988 Invention Agreement"). The 1988 Invention Agreement expressly obligated Appleby to assign to Tecomet his rights in inventions, improvements and discoveries made that result from his work at Tecomet. He further expressly agreed not to disclose or use for his own benefit any trade secrets or company private information pertaining to any actual or anticipated business of Tecomet or any of its customers, consultants, or licensees. A true and correct copy of the 1988 Invention Agreement is attached hereto as Exhibit G and incorporated herein by reference.

28. Also in 1988, Appleby assented, with his signature, to the Conflict of Interest Policy Guide and Employee Consent ("the 1988 Conflict Policy"). The 1988 Conflict Policy proscribed the disclosure or use of confidential information for the personal profit or advantage of an employee or anyone else. A true and correct copy of the 1988 Conflict Policy is attached hereto as Exhibit H and is incorporated herein by reference.

29. Appleby's employment with Tecomet was interrupted for approximately 26 months between 1994 and 1996. During the entirety of that period, he was retained as a consultant by Tecomet under three (3) consulting agreements each of which expressly obligated Appleby to a duty of confidentiality and reaffirmed his obligations under the 1988 Invention Agreement and the 1988 Conflict Policy. A true and correct copy of the three (3) Consulting Agreements are attached hereto as Exhibit I and are incorporated herein by reference.

30. In October, 1996 Appleby returned to Tecomet as an employee and executed a second Company Information and Invention Agreement ("the 1996 Invention Agreement") which expressly reaffirmed his duty of confidentiality, non-use and assignment of inventions. A true and correct copy of the 1996 Invention Agreement is attached hereto as Exhibit J and is incorporated herein by reference.

31. In November 2000, Appleby and Tecomet entered into a Consulting Agreement ("the 2000 Consulting Agreement") under which Appleby was to provide technical consulting services to Tecomet. This agreement expressly obligated Appleby to a duty of confidentially. A true and correct copy of the 2000 Consulting Agreement is attached hereto as Exhibit K and is incorporated herein by reference.

32. During his employment with Tecomet, Fraser duly executed a Company Information and Invention Agreement ("the 1997 Invention Agreement"). The 1997 Invention

8

37. Defendant has knowingly used and are continuing to use Tecomet Proprietary Information, including Tecomet trade secrets, without the consent or authority of Tecomet.

38. At the time of Defendant's misappropriation, the Tecomet Proprietary Information including Tecomet trade secrets were not publicly available.

39. Defendant has knowingly benefited from the misappropriated trade secrets.

40. From a time prior to the misappropriation, Tecomet pursued, and continues to pursue, an active course of conduct designed to inform its employees, contractors, and agents that Tecomet Proprietary Information was, and is, to remain confidential.

41. Tecomet has sustained injury and damages as a result of Defendant's misappropriation of Tecomet trade secrets.

42. Tecomet will sustain irreparable harm if Defendant is permitted to continue to use Tecomet Proprietary Information including Tecomet trade secrets.

## Count II
## (Common Law Misappropriation of Private Business Information)

43. The averments of paragraphs 1 through 42 above are incorporated herein by reference.

44. Defendant improperly disclosed and caused to be published Tecomet private business information in the Patent Applications.

45. Defendant has used and is continuing to use Tecomet private business information without the consent or authority of Tecomet.

1-PH/1953943.1

46. Defendant has knowingly benefited from the Tecomet private business information.

47. Tecomet has sustained injury and damages as a result of Defendant's misappropriation of Tecomet private business information.

48. Tecomet will sustain irreparable harm if Defendant is permitted to continue to use Tecomet Private business information.

## Count III
### (Breach of Confidentiality Agreements)

49. The averments of paragraphs 1 through 48 above are incorporated herein by reference.

50. Atkinson agreed not to disclose to others or use for his own benefit during his consulting relationship with Tecomet or thereafter any trade secrets or Tecomet private information pertaining to any of the actual or anticipated business of Tecomet or any of its customers, consultants, or licensees, acquired by him during the period of his consulting relationship ("the Confidentiality Agreements").

51. The Patent Applications contain Tecomet trade secrets and/or Tecomet private information pertaining to the actual and/or anticipated business of Tecomet and/or any of its customers, consultants, or licensees.

52. Atkinson has breached his obligations under the Confidentiality Agreements by, including but not limited to, one or more of the following:

(a) incorporating Tecomet Proprietary Information and other private information in the Patent Applications,

(b) causing the Patent Applications to be publicly available,

(c) using Tecomet Proprietary Information and other private information in the course of his business, and

(d) using Tecomet trade secrets and other private information to perform the methods described in the Patent Applications.

53. Tecomet has sustained injury and damages as a result of Atkinson's breach of the Confidentiality Agreements.

## Count IV
## (Inducement of Breach of Contract)

54. The averments of paragraphs 1 through 53 above are incorporated herein by reference.

55. Atkinson has induced Appleby to breach the 1996 Invention Agreement and the General Consulting Agreement.

56. Atkinson has induced Fraser to breach the 1997 Invention Agreement.

57. Tecomet has sustained injury and damages as a result of Atkinson's inducement of Appleby to breach his contractual obligations.

58. Tecomet has sustained injury and damages as a result of Atkinson's inducement of Fraser to breach his contractual obligations.

## Count V
## (Violation of Mass. G.L. Ch. 93: Section 42A. Injunctive relief taking of trade secrets)

59. The averments of paragraphs 1 through 58 above are incorporated herein by reference.

60. MSI competes with Tecomet in the field of fabrication of high-resolution micro-mechanical devices.

61. As a co-founder of MSI, Atkinson, a former consultant of Tecomet, is working in a directly competitive capacity with Tecomet in violation of the terms of his consulting agreements with Tecomet.

62. Atkinson has used Tecomet trade secrets in such competition with Tecomet.

63. Tecomet is entitled to a preliminary and permanent injunction against Defendant's continued use of Tecomet trade secrets.

## Count VI

### (Violation of the Virginia Uniform Trade Secrets Act)

64. The averments of paragraphs 1 through 63 above are incorporated herein by reference.

65. Tecomet engages in trade or commerce.

66. Defendant has engaged, and is engaging, in misappropriation of Tecomet trade secrets.

67. Defendant's misappropriations of trade secrets was, and is, willful and malicious.

68. Tecomet has suffered and continues to suffer monetary, property, real and/or personal losses as a result of Defendant's misappropriations of trade secrets.

1-PH/1953943.1

69. Tecomet is entitled to injunctive relief, monetary damages, punitive damages, attorney's fees, and costs as provided for in the Virginia Uniform Trade Secrets Act.

## Count VII

### (Civil Conspiracy)

70. The averments of paragraphs 1 through 69 above are incorporated herein by reference.

71. Atkinson knew that the conduct of Appleby and Fraser described above constituted breaches of their contractual, fiduciary and common law duties.

72. Atkinson knowingly provided substantial assistance and/or encouragement to Appleby and Fraser to engage in their wrongful acts and achieve the desired results of the wrongful acts.

73. Atkinson's substantial assistance and/or encouragement to Appleby and Fraser contributed to a common tortious plan that was carried out by Atkinson, Appleby and Fraser to misappropriate Tecomet Proprietary Information and otherwise breach their duties to Tecomet.

74. Tecomet has sustained injury and damages as a result of Atkinson's civil conspiracy with Appleby and Fraser described above.

## Count VII
### (Inducement of Breach of Duty of Loyalty by Appleby)

75. The averments of paragraphs 1 through 74 above are incorporated herein by reference.

76. Appleby was Tecomet's Director of Product Development. In that capacity, he was charged with developing and protecting Tecomet proprietary technology, products and processes. As such, Appleby was entrusted with some of Tecomet's most sensitive projects. He had authority to hire staff and had responsibility for the oversight of research, development and production personnel. Appleby was also responsible for protecting Tecomet Proprietary Information and Tecomet Materials.

77. Appleby used the information that he obtained during his tenure at Tecomet as a source for the disclosure contained in the Patent Applications.

78. Appleby used the information he obtained during his tenure at Tecomet for the benefit of MSI in its competition against Tecomet.

79. During the period of his employment with Tecomet, Appleby was also affiliated with P-10 Micro Engineering, LLC.

80. P-10 Micro Engineering competed with Tecomet.

81. During the period in which he held a position of responsibility, trust, and confidence with Tecomet, Appleby used information, including Tecomet Proprietary Information and Tecomet Materials, to solicit a grant under NASA's Small Business Innovation Research program ("the SBIR solicitation") for the benefit of P-10 Micro Engineering, LLC. Upon information and belief, this occurred in late 1999 to the beginning of 2000.

82. Appleby illicitly concealed the existence of the SBIR Solicitation with the intent to deceive Tecomet and/or in breach of his fiduciary duty of full disclosure to Tecomet.

83. Tecomet discovered the existence of the SBIR Solicitation in approximately December of 2002.

90. In breach of his duty of loyalty to Tecomet, Fraser exploited the trust that Tecomet placed in him by using, for his own advantage and that of MSI and to the detriment of Tecomet, Tecomet Proprietary Information and Tecomet Materials that he obtained during the course of his employment.

91. Tecomet has sustained injury and damages as a result of Fraser breaching his duty of loyalty.

92. Tecomet will sustain irreparable harm if Fraser is permitted to continue to use Tecomet Proprietary Information and Tecomet Materials in breach of his duty of loyalty to Tecomet.

93. Atkinson knowingly induced or participated in Fraser's above-referenced breach of his duty of loyalty to Tecomet.

94. Tecomet has sustained injury and damages as a result of Fraser's breach of his duty of loyalty or Atkinson's inducement thereof.

95. Tecomet will sustain irreparable harm if Fraser is permitted to continue to use Tecomet Proprietary Information and Tecomet Materials in breach of his duty of loyalty to Tecomet and Atkinson is permitted to continue to induce Fraser's breach of his duty of loyalty.

WHEREFORE, Tecomet demands judgment against Atkinson and requests the following relief:

(a) That Atkinson and all persons in active concert or participation with him be enjoined, preliminarily until hearing and perpetually thereafter, from using and/or disclosing to anyone the Tecomet Materials and Tecomet Proprietary Information including Tecomet trade secrets;

1-PH/1953943.1

(b) That Atkinson and all persons in active concert or participation with him be enjoined, preliminarily until hearing and perpetually thereafter, from soliciting business from Tecomet customers in competition with Tecomet;

(c) That Atkinson be ordered to assign to Tecomet all of his rights to the Patent Applications and all applications related to the Patent Applications, and all applications prepared for or by Atkinson which have subject matter common to the Patent Applications and/or that relate to Tecomet Proprietary Information and/or Tecomet Materials;

(d) That Atkinson holds a constructive trust for Tecomet's benefit in the Patent Applications and all pending applications related to the Patent Applications, and all pending applications prepared for or by Atkinson which have subject matter common to the Patent Applications and/or that relate to Tecomet Proprietary Information and/or Tecomet Materials;

(e) That Atkinson be ordered to return all Tecomet Materials to Tecomet including all copies made therefrom;

(f) That Atkinson be ordered to pay damages in an amount to be proven at trial that exceeds $1,000,000;

(g) That Atkinson be ordered to pay double the amount of damages found pursuant to Mass. G.L. Ch. 93, §42;

(h) That Atkinson be ordered to pay attorney's fees, costs and interest; and

(i) such other and further relief as this Court deems just and proper.

1-PH/1953943.1

## DEMAND FOR JURY TRIAL

Tecomet, Inc. hereby demands a trial by jury on all claims so triable.

TECOMET, INC.

By its attorneys,

*/s/ Edward S. Mazurek*
Edward S. Mazurek
Jeremy P. Blumenfeld
Kenneth J. Davis
**MORGAN, LEWIS & BOCKIUS, LLP**
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

Local Counsel:

*/s/ Christopher R. O'Hara*
Christopher R. O'Hara (BBO # 548611)
Tricia A. Rice (BBO # 633556)
**TODD & WELD LLP**
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: March 2, 2004

19